**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF CALIFORNIA ex rel. Rob Bonta, in his official capacity as Attorney General of the State of California,,

*Plaintiff - Appellee*,

v.

PHILLIP DEL ROSA, in his personal and official capacity as Chairman of the Alturas Indian Rancheria; DARREN ROSE, in his personal and official capacity as Vice-chairman of the Alturas Indian Rancheria; WENDY DEL ROSA, in her official capacity as Secretary-Treasurer of the Alturas Indian Rancheria,

*Defendants - Appellants*,

and

AZUMA CORPORATION,

*Defendant*.

No. 24-698

D.C. No.
2:23-cv-00743-KJM-DB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted July 30, 2025
San Francisco, California

Filed November 7, 2025

Before: Milan D. Smith, Jr., Mark J. Bennett, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Prevent All Cigarette Trafficking Act

In an interlocutory appeal, the panel affirmed the district court's denial of motions to dismiss claims for injunctive relief and for civil penalties and money damages under the Prevent All Cigarette Trafficking Act (PACT Act) brought by the State of California against the Azuma Corporation, a company owned by a federally recognized Indian tribe, and individual tribal officers.

The panel first held that defendants did not waive their arguments concerning sovereign immunity.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's denial of defendants' motion to dismiss California's claims for injunctive relief against individual defendants in their official capacities based on tribal sovereign immunity. The panel held that relief under *Ex parte Young*, which normally allows federal courts to award prospective injunctive relief against state and tribal officials for violations of federal law, is available under the PACT Act. The PACT Act does not limit who may be sued and does not limit what kind of relief a court may order. Nor does the PACT Act contain a sufficiently detailed remedial scheme to signal Congress's intent to foreclose *Ex parte Young* relief.

The panel also affirmed the district court's denial of defendants' motion to dismiss California's claims for civil penalties and money damages against individual defendants in their personal capacities based on qualified immunity. The panel held that because California sought to enforce state tax and regulatory obligations pursuant to a federal statute, defendants could not assert qualified immunity.

---

**COUNSEL**

Peter F. Nascenzi (argued), David C. Goodwin, and Byron M. Miller, Deputy Attorneys General; James V. Hart, Supervising Deputy Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Sacramento, California; for Plaintiff-Appellee.

Tim J. Hennessy (argued), John M. Peebles, and Gregory M. Narvaez, Peebles Bergin Schulte & Robinson LLP,

Sacramento, California; Conly J. Schulte, Peebles Bergin Schulte & Robinson LLP, Louisville, Colorado; for Defendants-Appellants.

---

## OPINION

BENNETT, Circuit Judge:

In 2023, seeking to enforce its cigarette laws under the federal Prevent All Cigarette Trafficking Act of 2009 (PACT Act), 15 U.S.C. §§ 376–376a, Plaintiff the State of California filed suit in federal court against Defendants the Azuma Corporation (a company owned by a federally recognized Indian tribe), Darren Rose, Phillip Del Rosa, and Wendy Del Rosa. The State alleged that Defendants violated various California cigarette tax statutes and regulations.

California sought injunctive relief against the individual Defendants (Rose, Phillip Del Rosa, and Wendy Del Rosa) in their official capacities and against Azuma to mandate compliance with state cigarette taxation laws and prohibit the sale or distribution of contraband cigarettes. California also claimed civil penalties and money damages against Azuma and against Rose and Phillip Del Rosa in their personal capacities.

Defendants moved to dismiss California's claims for injunctive relief pursuant to the PACT Act based on sovereign immunity. While *Ex parte Young*, 209 U.S. 123 (1908), normally allows federal courts to award prospective injunctive relief against state and tribal officials for violations of federal law, Defendants argued that Congress displaced the injunctive relief otherwise available by

including a detailed remedial scheme in the PACT Act. As to California's PACT Act claims for civil penalties and money damages, Defendants asserted qualified immunity. The district court rejected both arguments, and Defendants appealed, invoking jurisdiction based on the collateral order doctrine.

We must decide whether *Ex parte Young* relief is available under the PACT Act. We hold that it is. The PACT Act does not limit who may be sued and does not limit what kind of relief a court may order. Nor does the PACT Act contain a sufficiently detailed remedial scheme to signal Congress's intent to foreclose *Ex parte Young* relief. We must also decide whether Defendants may assert qualified immunity for California's claims for civil penalties and money damages brought pursuant to the PACT Act. We hold that they may not. Because California seeks to enforce state tax and regulatory obligations pursuant to a federal statute, Defendants cannot assert qualified immunity. We thus affirm.

## BACKGROUND

Azuma Corporation is owned and operated by the Alturas Indian Rancheria (the Tribe), a federally recognized Indian tribe. Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 89 Fed. Reg. 944 (Jan. 8, 2024). Azuma manufactures and distributes cigarettes in California to retailers owned by other Indian tribes. These retailers sell to non-Indian consumers. Azuma also sells cigarettes directly to consumers, including non-Indian consumers, through its own retail smokeshops. The Tribe is governed by a General Council, which in turn elects a three-person Business Committee. The Business Committee has the authority to

promulgate all ordinances, resolutions, or other enactments of the Tribe, to represent the Tribe in all negotiations with local, state, and federal governments, and other tribes, and to administer all lands and assets and manage all economic affairs and enterprises of the Tribe.　The Business Committee is made up of Defendants Rose, Phillip Del Rosa, and Wendy Del Rosa.[1]

The PACT Act federalizes some state cigarette taxes. *See* 15 U.S.C. § 376a(a)(3)(A)–(B) ("[E]ach delivery seller shall comply with . . . all State, local, tribal, and other laws generally applicable to sales of cigarettes . . . including laws imposing . . . excise　taxes; . . . [and]　licensing　and　tax-stamping requirements."). The PACT Act requires that the Attorney General of the United States "compile a list of delivery sellers of cigarettes" that are not in compliance with the Act. *Id.* § 376a(e)(1)(A).　Sellers on the list may not distribute or have another party distribute their cigarettes. *See id.* § 376(a)(e)(2)(A).

When sellers violate the PACT Act, States may bring suit to enforce the Act.　Under the statute:

> A State, through its attorney general, or a
> local government or Indian tribe that levies a
> tax subject to section 376a(a)(3) of this title,

---

[1] According to California, Rose and Phillip Del Rosa "have used their two votes [on the Business Committee] to control the Alturas Tribe's tobacco business operations."　Both Rose and Phillip Del Rosa are directors on Azuma's governing board.　Phillip Del Rosa "is also an officer, director, and/or manager" of "several businesses" "which retail and/or distribute cigarettes, including the Desert Rose Casino."　Both Rose and Phillip Del Rosa are named in California's complaint in their official and personal capacities.　Wendy Del Rosa is only named as a defendant in her official capacity.

> through its chief law enforcement officer,
> may bring an action in a United States district
> court to prevent and restrain violations of this
> chapter by any person or to obtain any other
> appropriate relief from any person for
> violations of this chapter, including civil
> penalties, money damages, and injunctive or
> other equitable relief.

*Id.* § 378(c)(1)(A).  The PACT Act defines a "person" able to be sued under the Act, as "an individual, corporation, . . . State government, local government, Indian tribal government, governmental organization of such a government, or joint stock company."  *Id.* § 375(11).  And the Act specifies that it does not modify the sovereign immunity of a federally recognized tribe.

> Nothing in this chapter shall be deemed to
> abrogate or constitute a waiver of any
> sovereign immunity of a State or local
> government or Indian tribe against any
> unconsented lawsuit under this chapter, or
> otherwise to restrict, expand, or modify any
> sovereign immunity of a State or local
> government or Indian tribe.

*Id.* § 378(c)(1)(B).

California "levies a tax subject to section 376a(a)(3)" of the PACT Act.  *Id.* § 378(c)(1)(A).  Namely, California imposes an excise tax on the distribution of cigarettes.  *See* Cal. Rev. & Tax. Code §§ 30001–483.  Distributors purchase stamps from the State to affix to their packaging before the cigarette packs are distributed.  *Id.* §§ 30161,

30163(a).  To facilitate the collection of taxes, distributors are required to obtain state licenses and must file monthly reports with the California Department of Tax and Fee Administration.[2]  *Id.* §§ 30140, 30182(a), 30183(a); Cal. Bus. & Prof. Code § 22975(a).  California also collects payments from cigarette distributors as part of the 1998 Master Settlement Agreement (MSA) between the four major cigarette manufacturers, forty-six States, and others. *See King Mountain Tobacco Co. v. McKenna*, 768 F.3d 989, 991 (9th Cir. 2014); Cal. Health & Safety Code § 104555(e). California collects payments so that "financial burdens imposed on the state by cigarette smoking [are] borne by tobacco product manufacturers rather than by the state." Cal. Health & Safety Code § 104555(d).  California requires manufacturers who signed the MSA to remit annual payments to California.  Non-signatory manufacturers must choose to either become participating manufacturers under the MSA or escrow money for future collection.  *Id.* § 104557(a).

---

[2] California's cigarette taxation regime recognizes that it may not tax certain tribal cigarette distributions.  "[C]igarettes sold . . . by a Native American tribe to a member of that tribe on that tribe's land" are "exempt from state excise tax pursuant to federal law."  Cal. Health & Safety Code § 104556(j); *see Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 101–02 (2005) ("States are categorically barred from placing the legal incidence of an excise tax '*on a tribe or on tribal members* for sales made *inside Indian country*' without congressional authorization." (quoting *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 459 (1995))).  But when tribal cigarettes are sold off reservation or to a non-member of the retailer tribe, the "user or consumer" must pay the tax, and the exempt distributor must still collect the tax and remit it to the State.  Cal. Rev. & Tax Code §§ 30008(b), 30107, 30108(a), 30184; *see also Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 10–12 (1985) (per curiam).

To make sure manufacturers meet their obligations to escrow or remit payments, California enacted the Directory Statute. Manufacturers who provide assurances to California that they will meet their obligations are placed on the "Tobacco Directory," and their cigarettes may be sold to consumers in the State. Cal. Rev. & Tax Code § 30165.1(c). Manufacturers who do not meet their escrow deposit requirements or do not provide assurances that they will meet their payment obligations under the MSA are not listed on the directory and their cigarettes are contraband. *Id.* § 30165.1(c)(2)(A), (c)(2)(C), (e)(2).

California contends that Defendants violated the PACT Act by distributing contraband cigarettes in violation of California tax laws. Azuma manufactures its own cigarettes under two brands: Tracker and Tucson. Azuma does not collect the required excise taxes or MSA payments for these brands, and they are not listed on the California Tobacco Directory. These cigarettes are contraband. Another cigarette company, Seneca Manufacturing Co., also produces cigarettes under two brands: Heron and Sands. Neither Heron nor Sands cigarettes are listed in California's Tobacco Directory, which makes them contraband in the State. To enable Seneca to import Heron and Sands cigarettes into California, Azuma allegedly made a deal with Seneca Manufacturing under which Seneca would affix Azuma's cigarette license number to the Heron and Sands cigarettes. But these cigarettes are also contraband because Azuma has not collected or held in escrow the relevant California excise taxes or MSA payments.

The State further contends that Azuma engages in the unlawful distribution of cigarettes. Azuma distributes cigarettes to other tribal retailers outside the Alturas Indian Rancheria reservation without Azuma or its customers

collecting California excise taxes or MSA payments. And Azuma and its customers sell cigarettes to non-Tribe members without collecting California excise taxes or MSA payments.

California alleges that Azuma "supplies contraband cigarettes directly to other retail smokeshops outside of Alturas Indian country" and "has also supplied contraband cigarettes to such smokeshops indirectly through unlicensed distributors operating within the State." Azuma also purportedly sells contraband cigarettes at three of its own retail smokeshops directly to consumers.

In September 2018, California issued a letter to Azuma, warning that its distribution of cigarettes violated state law and the PACT Act. Azuma responded stating that it did not need to comply with California's cigarette laws because it is a tribal business that distributes to other tribal entities.

In December 2018, California requested that Azuma be listed on the federal PACT Act's non-compliant list. In February 2019, the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) sent Azuma a letter explaining that it was considering placing Azuma on the PACT Act non-compliant list. Then, in April 2019, ATF placed Azuma on the list.[3] In October 2022, California sent Azuma a warning letter demanding that Azuma cease its

---

[3] In September 2019, Azuma claimed not to have received any notice that it had been placed on the non-compliant list. ATF gave Azuma opportunity to respond to being nominated to the list. In November 2019, ATF rejected Azuma's arguments and confirmed that Azuma belonged on the list, effective December 2019. In early 2020, Azuma again sought removal from the non-compliant list, but ATF again rejected its arguments.

unlawful activity.  Azuma continued to operate without collecting or remitting the required payments to California.

In April 2023, Azuma requested removal from the non-compliant list.  ATF rejected Azuma's request, concluding:

> It is ATF's position that Azuma continues to violate the Contraband Cigarette Trafficking Act (CCTA) and PACT Act by illegally shipping unstamped, untaxed cigarettes that are not permitted by the California directory to unlicensed entities which cannot lawfully possess untaxed, unstamped cigarettes, failing to properly record these transactions under the CCTA record-keeping requirements and failing to properly report transactions under the PACT Act.

Azuma remains on the list to this day.

In April 2023, California filed suit in the U.S. District Court for the Eastern District of California asserting, among other claims, violations of the PACT Act.  California alleged that Defendants violated California laws and the PACT Act because "Defendants do not pay or collect and remit California excise taxes," "Defendants sell, offer, possess for sale in California, ship, and/or or otherwise distribute into or within California cigarettes not found on the California cigarette directory," and Defendants "do not comply with the shipping requirements, recordkeeping requirements, or tax collection requirements of the PACT Act."[4]

---

[4] California also brought claims under the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C. §§ 2341–46, which permits States to bring civil actions for "any person knowingly to ship, transport, receive,

In June 2023, California moved to enjoin Azuma from delivering cigarettes in violation of the PACT Act. The district court issued a preliminary injunction, and we affirmed. We concluded that:

> At the preliminary injunction stage, California has produced enough evidence to support that at least the Tribal Retailers who operate smoke shops are subject to California's regulatory scheme. The Defendants have not met their burden at the preliminary injunction stage to show that any of the Tribal Retailers are operating lawfully.

*California v. Azuma Corp.*, No. 23-16200, 2024 WL 4131831, at *2 (9th Cir. Sept. 10, 2024). Because Defendants did not demonstrate that they operated lawfully, we affirmed the district court's finding that "California ha[d] shown a sufficient likelihood of success on the merits of its PACT Act claim."[5]  *Id.* at *3.

---

possess, sell, distribute, or purchase contraband cigarettes," *id.* §§ 2342(a), 2346(b), and the Civil Racketeer Influenced and Corrupt Organizations Act (Civil RICO), 18 U.S.C. § 1962(c)–(d).

[5] Defendants apparently have not complied with the preliminary injunction. In February 2024, following a contempt motion by California, the district court found that California "provided evidence showing Azuma has continued to deliver cigarettes on its own behalf" "to the same customers previously identified in the preliminary injunction record." Even after California filed for contempt, but before the district court ruled, Azuma "shipped an estimated additional 2.5 million cigarettes" in violation of the preliminary injunction. In February 2025, California filed a notice of violation that "the distribution of Azuma cigarettes ha[d] continued uninterrupted," and that Azuma had distributed over 29 million cigarettes since February 2024.

In July 2023, while their appeal of the district court's preliminary injunction was pending, Defendants moved to dismiss the case. As relevant to this appeal, Defendants argued that: (1) Azuma is an arm of the Tribe and has tribal sovereign immunity from suit; (2) the individual Defendants share the Tribe's sovereign immunity for the official-capacity claims against them; and (3) qualified immunity shields the individual Defendants from the personal capacity claims against them.[6] Applying the five factors identified in *White v. University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014), the district court concluded that Azuma is "an arm of the Alturas Tribe" and as a result is shielded by tribal sovereign immunity.[7] The district court thus dismissed California's claims against Azuma.

But the district court held that the doctrine of *Ex parte Young* did not bar claims for injunctive relief against the individual Defendants in their official capacities. In reaching that result, the district court relied on its order granting a preliminary injunction, which reasoned that

---

[6] Defendants also argued that California failed to state a claim under the CCTA and RICO and that California failed to join Azuma's tribal customers, who were allegedly necessary and indispensable parties under Federal Rule of Civil Procedure 19. The district court found "without deciding whether the CCTA bars *Ex parte Young* actions . . . [that] California's action under the CCTA is barred by statute." The district court reasoned that "[t]he CCTA explicitly prohibits states from bringing a civil action 'against an Indian tribe or an Indian in Indian Country'" and dismissed California's CCTA claim. The district court also found that California failed to state a claim under civil RICO and dismissed California's RICO claims against Defendants. Finally, the district court rejected Defendants' Rule 19 argument, finding that the tribal retailers were not necessary parties. These conclusions are not challenged on appeal.

[7] California does not dispute this conclusion on appeal.

unlike statutory schemes in which Congress enacted a "detailed remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy available under *Ex parte Young*," "the relevant PACT Act provisions place no limits on available remedies or who may be sued." The district court concluded that the statute "does not show Congress intended to foreclose *Ex parte Young* actions" but rather "confirms pre-existing remedies and defenses are available." The district court accordingly found that California's *Ex parte Young* claims under the PACT Act could proceed against the individual defendants in their official capacities.

The district court also concluded that qualified immunity did not bar California's suit against the individual Defendants. The district court reasoned that "California is not seeking damages for violation of its rights" but "to enforce Federal and State laws." The district court determined that "Defendants have not shown they are entitled to qualified immunity" because "Defendants d[id] not cite, nor c[ould] the [district] court find, any authority extending qualified immunity to tribal officers sued in their personal capacities for violating federal and state laws." Defendants timely appealed, invoking our jurisdiction under the collateral order doctrine.

The district court properly rejected Defendants' sovereign immunity defense as to California's claims brought under the PACT Act. We hold that California can seek relief under *Ex parte Young* for PACT Act claims because the statute does not restrict who may be sued and does not specify against whom a suit may be brought. Further, while the PACT Act permits a State to refer violations to the federal government to bring enforcement actions, the statute does not contain a detailed remedial

scheme that would displace relief under *Ex parte Young*. The district court also properly denied the individual Defendants' claims for qualified immunity. Because California seeks to enforce state law, through a federal statute, against tribal officials, qualified immunity does not insulate the individual Defendants from California's claims.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under the collateral order doctrine. The district court's denials of qualified immunity and "tribal sovereign immunity [are] immediately appealable under the collateral order doctrine." *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007) (applying the collateral order doctrine to a suit brought against tribal officials where sovereign immunity would have barred the action if not for the *Ex parte Young* exception); *Est. of Anderson v. Marsh*, 985 F.3d 726, 730 (9th Cir. 2021) (explaining that "pretrial orders denying qualified immunity generally fall within the collateral order doctrine" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014))). We review de novo questions of tribal sovereign immunity, *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002), and qualified immunity, *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022).

## DISCUSSION

## I.  Waiver

California contends that Defendants have waived their sovereign immunity arguments. The State argues that because Defendants had the opportunity to raise their *Ex parte Young* argument "in their prior appeal of the district court's preliminary injunction" and did not, they have waived the defense. We disagree.

Tribes enjoy sovereign immunity from suit. "The common law sovereign immunity possessed by the Tribe," the Supreme Court has emphasized, "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Rsrv. v. World Eng'g*, 476 U.S. 877, 890 (1986). Unless Congress provides otherwise, "tribal immunity, like all aspects of tribal sovereignty, is privileged from diminution by the States." *Id.* at 891. Accordingly, the Court has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) (alteration in original) (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998)).

State and tribal immunity, while providing similar protection against suit, differ in how they may be waived. The Supreme Court has recognized that a State's sovereign immunity is "a personal privilege which it may waive at [its] pleasure." *Clark v. Barnard*, 108 U.S. 436, 447 (1883). A State may implicitly waive its immunity by submitting itself to federal jurisdiction. *See In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002) ("A state generally waives its immunity when it 'voluntarily invokes [federal] jurisdiction or . . . makes a "clear declaration" that it intends to submit itself to [federal] jurisdiction.'" (alterations in original) (quoting *In re Lazar*, 237 F.3d 967, 976 (9th Cir. 2001))). For example, we have held that a State implicitly waives its sovereign immunity by "participating in extensive pre-trial activities and waiting until the first day of trial before objecting to the federal court's jurisdiction on Eleventh Amendment grounds." *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 756 (9th Cir. 1999), *as amended by* 201 F.3d 1186 (9th Cir. 2000).

By contrast, "waivers of tribal sovereign immunity may not be implied." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006). Participation in administrative proceedings, *see Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996), or removal to federal court, *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1022 (9th Cir. 2016), are not waivers of tribal sovereign immunity. Nor does a tribe, by filing suit, waive its immunity to a compulsory counterclaim. *Id.* at 1020 (citing *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509–10 (1991)). Rather, a tribe's immunity is only waived through an "unequivocal expression of the Tribe's intent to waive its immunity." *Id.* at 1022.

Defendants did not unequivocally waive, and even explicitly asserted, their tribal sovereign immunity defense. In their first responsive pleading, in opposition to California's motion for a preliminary injunction, Defendants argued that "[t]he State's claims are barred by tribal sovereign immunity because the [PACT] Act precludes the application of *Ex parte Young* to the Del Rosas and Rose." Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. at 30, *California v. Azuma Corp.*, No. 23-cv-00743 (E.D. Cal. July 10, 2023), Dkt. No. 23. It is true that in their prior interlocutory appeal of the district court court's grant of a preliminary injunction, Defendants did not argue that sovereign immunity precluded California's suit. But while that appeal was pending, Defendants' motion to dismiss asserting sovereign immunity was simultaneously pending before the district court. Defendants therefore did not waive their sovereign immunity arguments.

## II.  Tribal Sovereign Immunity and *Ex parte Young*

Defendants argue that tribal sovereign immunity bars California's claims under the PACT Act and that the *Ex parte Young* exception to sovereign immunity does not apply.  Defendants contend that because the PACT Act contains a detailed remedial scheme, Congress intended to foreclose *Ex parte Young* relief in favor of statutory remedial relief.  The district court disagreed, concluding that *Ex parte Young* relief was available because "the relevant PACT Act provisions place no limits on available remedies or who may be sued.  Instead, the Act provides for a broad cause of action."  The district court did not err in so concluding.

"Indian tribes," the Supreme Court has explained, "exercise inherent sovereign authority over their members and territories."  *Okla. Tax Comm'n*, 498 U.S. at 509 (quoting *Cherokee Nation v. Georgia*, 5 Pet. 1, 17 (1831)).[8] "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'"  *Bay Mills Indian Cmty.*, 572 U.S. at 788 (quoting *Santa Clara Pueblo*, 436 U.S. at 58).  Sovereign immunity shields the tribes from suits brought by the States, *see Okla. Tax Comm'n*, 498 U.S.

---

[8] Congress possesses the authority to define the scope of tribal sovereign immunity. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) ("Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess.").  But "until Congress acts, the tribes retain" their sovereign authority.  *United States v. Wheeler*, 435 U.S. 313, 323 (1978), *superseded by statute as stated in United States v. Lara*, 541 U.S. 193, 207 (2004).

at 509, and, by the same token, shields the States from suits brought by tribes, *see Blatchford*, 501 U.S. at 782.[9]

As discussed, suits against tribes are barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation.  *See Santa Clara Pueblo*, 436 U.S. at 58.  A tribe's sovereign immunity extends to "suits arising from a tribe's commercial activities, even when they take place off Indian lands." *Bay Mills Indian Cmty.*, 572 U.S. at 790.  And "[t]ribal sovereign immunity 'extends to tribal officials when acting in their official capacity and within the scope of their authority.'" *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) (quoting *Linneen*, 276 F.3d at 492).[10]

In *Ex parte Young*, however, the Supreme Court "established an important limit on the sovereign-immunity principle," *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011), "for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

---

[9] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  In interpreting the Eleventh Amendment, the Supreme Court has recognized that the Amendment "stand[s] not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty." *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991).

[10] The parties do not dispute that the individual Defendants were acting in their official capacities and would enjoy sovereign immunity protections if not for the *Ex parte Young* exception.

261, 269 (1997). "Because a state officer who violates federal law acts outside the scope of her authority, she is 'not the State for sovereign-immunity purposes' and is subject to a federal court's injunctive power." *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023) (quoting *Va. Off.*, 563 U.S. at 254).

*Ex parte Young* did not emerge in the context of tribal sovereign immunity. And while tribal and state sovereign immunity are not the same, we have recognized that tribal sovereign immunity does not bar actions brought under *Ex parte Young. See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020) ("Suits seeking prospective injunctive relief ordinarily may proceed against tribal officers sued in their official capacities under the doctrine of *Ex parte Young*."). For a suit to proceed under this exception, "the plaintiff must allege . . . an ongoing violation of federal law for which [it] seeks prospective injunctive relief." *Columbia Basin Coll.*, 77 F.4th at 1221 (citing *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019)). In this case, California alleges an ongoing violation of the PACT Act and seeks prospective injunctive relief.

There are exceptions to *Ex parte Young*, however. As relevant here, "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996).[11]

---

[11] This case concerned the Seminole Tribe of Florida's suit against the State of Florida for failing to uphold its obligations under the Indian Gaming Regulatory Act. *Id.* at 51–52. Because *Ex parte Young* claims are an exception to tribal sovereign immunity, we see no reason why the

"Where Congress has created a remedial scheme for the enforcement of a particular federal right . . . against federal officers," the Supreme Court has instructed that courts should "refuse[] to supplement that [statutory] scheme with one created by the judiciary." *Id.*

But this exception is limited to "detailed and exclusive remedial scheme[s]." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002). A statutory scheme that (1) "places no restriction on the relief a court can award" and (2) "does not even say whom the suit is to be brought against," the Supreme Court has explained, "does not without more 'impose upon the [tribe] a liability that is significantly more limited than would be the liability imposed upon the . . . officer under *Ex Parte Young*.'" *Id.* at 647–48 (quoting *Seminole Tribe*, 517 U.S. at 75–76); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188–89 (9th Cir. 2003) (per curiam).

Defendants argue that the PACT Act provides a detailed remedial scheme such that relief under *Ex parte Young* is unavailable. The district court rejected this argument, finding that "the relevant PACT Act provisions place no limits on available remedies or who may be sued." The district court concluded that "[i]f Congress intended to change the default remedial scheme for unlawful conduct under the PACT Act, which includes *Ex parte Young* actions, it would either have said so expressly or enacted a detailed remedial scheme," but Congress "did neither."

The district court correctly concluded that the PACT Act does not displace relief under *Ex parte Young*. The PACT

---

*Seminole Tribe* exception to *Ex parte Young* does not apply with equal force to suits brought against tribal officials.

Act "places no restriction on the relief a court can award." *Verizon Md.*, 535 U.S. at 647. To the contrary, the Act expressly contemplates preexisting remedies, including under *Ex parte Young*. Section 378(c)(1)(A) provides:

> A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to section 376a(a)(3) of this title, through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this chapter by any person or to obtain any other appropriate relief from any person for violations of this chapter, including civil penalties, money damages, and injunctive or other equitable relief.

15 U.S.C. § 378(c)(1)(A). Read fairly, this statute does not limit the scope of "appropriate relief" that qualified plaintiffs may obtain, and "injunctive or other equitable relief" plainly includes injunctive relief under *Ex parte Young*.

Moreover, as the Supreme Court remarked about another statute, the PACT Act "does not even say whom the suit is to be brought against." *Verizon Md.*, 535 U.S. at 647. Under the PACT Act, a State may bring an action "to prevent and restrain violations of this chapter by any *person* or to obtain any other appropriate relief from any *person*." 15 U.S.C. § 378(c)(1)(A) (emphasis added). And the Act defines a person as "*an individual*, *corporation*, company, association, firm, partnership, society, State government, local government, *Indian tribal government*, *governmental organization of such a government*, or joint stock company." *Id.* § 375(11) (emphasis added). This definition, which

explicitly includes the very categories Defendants claim are excluded, makes clear that Congress did not intend to displace *Ex parte Young* relief under the statute.

Taking a different tack, Defendants also argue that the PACT Act's "[p]rovision of information" subsection, 15 U.S.C. § 378(c)(2), creates a detailed and exclusive remedial scheme that forecloses relief under *Ex parte Young*.

> A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to section 376a(a)(3) of this title, through its chief law enforcement officer, may provide evidence of a violation of this chapter by any person not subject to State, local, or tribal government enforcement actions for violations of this chapter to the Attorney General of the United States or a United States attorney, who shall take appropriate actions to enforce this chapter.

*Id.* § 378(c)(2). Defendants contend that Congress intended this "[p]rovision of information" subsection, *id.*, to be the exclusive avenue for relief against tribes under the PACT Act.

This argument is unavailing. To begin, the language of the "[p]rovision of information" subsection is permissive, not mandatory. *Id.* ("A State . . . *may provide* evidence of a violation . . . to the Attorney General . . . ." (emphasis added)). While "the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority," *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198 (2000), other sections of the PACT Act confirm that it is not an

exclusive remedy.  For example, the statute notes that "[t]he remedies available under this section . . . are in addition to any other remedies available under Federal, State, local, tribal, or other law" and that "[n]othing in this chapter shall be construed to expand, restrict, or otherwise modify any right of an authorized State official to proceed in State court, or take other enforcement actions, on the basis of an alleged violation of State or other law."  15 U.S.C. § 378(c)(4)(A)–(B).

These provisions (along with the previously cited provisions) are already dispositive.  But in enacting the PACT Act Congress also explicitly declined to modify any preexisting sovereign immunities, providing:

> Nothing in this chapter shall be deemed to abrogate or constitute a waiver of any sovereign immunity of a State or local government or Indian tribe against any unconsented lawsuit under this chapter, or otherwise to restrict, expand, or modify any sovereign immunity of a State or local government or Indian tribe.

*Id.* § 378(c)(1)(B).  If Defendants were correct that the "[p]rovision of information" subsection, *id.* § 378(c)(2), was an exclusive remedy, this subsection would be superfluous. *See United States v. Texas*, 143 U.S. 621, 646 (1892) (holding that States retain no sovereign immunity as against the federal government); *United States v. Yakima Tribal Ct.*, 806 F.2d 853, 861 (9th Cir. 1986) ("[T]he United States may sue Indian tribes and override tribal sovereign immunity."); *see also Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (expressing

a "general 'reluctan[ce] to treat statutory terms as surplusage.'" (alteration in original) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

The "[p]rovision of information" subsection, 15 U.S.C. § 378(c)(2), could also be read another way. Under a different reading, the statute permits States to bring *Ex parte Young* suits against tribal officials but bars other remedies, such as civil penalties. If a State or a tribe wished to obtain penalties beyond the limited relief available under *Ex parte Young*, the PACT Act's referral provision permits the United States alone to sue for that relief. The ability to refer suits to the federal government, though, does not mean that suits under *Ex parte Young* are barred by the Act.

In any event, the PACT Act's remedial scheme is also not so detailed as to foreclose relief under *Ex parte Young*. A comparison to *Seminole Tribe*, in which the Court found the remedial scheme sufficiently detailed, is instructive. 517 U.S. 44.

The Indian Gaming Regulatory Act imposes on the States an obligation to "negotiate with the Indian tribe in good faith" towards the formation of a Tribal-State compact regulating gaming activity within the State. 25 U.S.C. § 2710(d)(3)(A). The State's obligation to negotiate in good faith is "made judicially enforceable" by § 2710(d)(7), which authorizes a tribe to bring suit against a State in federal court to compel performance of that duty. *Seminole Tribe*, 517 U.S. at 49–50.

Once a suit has been filed, the statute requires a detailed process geared to ensure that a compact between the State and the tribe can be reached. "If the district court concludes that the State has failed to negotiate in good faith toward the formation of a Tribal-State compact, then it 'shall order the

State and Indian Tribe to conclude such a compact within a 60-day period.'" *Id.* at 50 (quoting 25 U.S.C. § 2710(d)(7)(B)(iii)). If no compact has still been reached after 60 days, the district court then appoints a mediator. *Id.* And if the State refuses to consent to the compact the mediator selects, then the statute authorizes the Secretary of Interior to prescribe a compact. *Id.* In light of this remedial scheme, the Supreme Court reasoned that permitting an *Ex parte Young* suit against a state officer to enforce compliance with the Indian Gaming Regulatory Act would render the Act's "intricate procedures" superfluous because "more immediate relief would be available under *Ex parte Young*." *Id.* at 74–75. The Court found that the imposition of such detailed remedial measures reflected that "Congress chose to impose upon the State a liability that is significantly more limited than would be the liability imposed under the state officer under *Ex parte Young*." *Id.* at 75–76.

The PACT Act, by contrast, lacks any complicated or intricate remedial measures. Under the statute, a State may bring an action in federal court to prevent violations, 15 U.S.C. § 378(c)(1)(A), or a State may refer information to the federal government "who shall take appropriate actions to enforce" the Act, *id.* § 378(c)(2). And, again, the PACT Act expressly does not "expand, restrict, or otherwise modify any right of an authorized State official to proceed in State court, or take other enforcement actions, on the basis of an alleged violation of State or other law." 15 U.S.C. § 378(c)(4)(B). Unlike the scheme created by the Indian Gaming Regulatory Act, the PACT Act allows States and other parties discretion in the remedies they seek, the means to obtain those remedies, and the forum in which to do so.

Defendants, quoting *Townsend v. University of Alaska*, 543 F.3d 478, 487 (9th Cir. 2008), assert that "a statute

reflects a 'detailed express remedial scheme' akin to *Seminole Tribe* where . . . the statute provides a method for the United States to enforce the statute against States in federal court, while other plaintiffs must pursue claims against States in state court, if at all." In *Townsend*, the plaintiff sought to sue the University of Alaska, an arm of the State of Alaska, under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). *Id.* at 481–82. The plaintiff argued that Congress created an implied right of action against an individual state supervisor under USERRA. *Id.* at 486. Responding to that argument, we held that "Congress manifested no intent to create a private right of action against state supervisors" and "by designing such a detailed express remedial scheme, Congress evinced an intent *not* to create an additional individual cause of action against state supervisors." *Id.* at 487.

USERRA differs from the PACT Act because USERRA provides that plaintiffs must sue in state court for violations of USERRA by state employers. *See* 38 U.S.C. § 4323(b)(2) ("In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State."); *see also Townsend*, 543 F.3d at 482–83. But "[i]n the case of an action against a State (as an employer) or a private employer commenced by the United States" or "[i]n the case of an action against a private employer by a person," "the district courts of the United States shall have jurisdiction" under USERRA. 38 U.S.C. § 4323(b)(1), (3). In contrast, the PACT Act does not restrict the forum or the person that can bring suit. So *Townsend* supports California's view of the PACT Act, not Defendants'.

For all these reasons, the district court correctly determined that *Ex parte Young* relief is available under the PACT Act.

## III.  Qualified Immunity

That brings us to Defendants' contention that California's claims for damages against Rose and Phillip Del Rosa are barred by qualified immunity.  The district court concluded that the doctrine of qualified immunity did not apply because "California is not seeking damages for violation of its rights.  Rather, it is seeking to enforce Federal and State laws."    The district court determined that "Defendants d[id] not cite, nor c[ould] the [district] court find, any authority extending qualified immunity to tribal officers sued in their personal capacities for violating federal and state laws."

We agree and hold that qualified immunity does not apply to California's claims under the PACT Act. "Qualified or 'good faith' immunity is an affirmative defense" that the defendant official bears the burden of showing.  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *see also Forrester v. White*, 484 U.S. 219, 224 (1988). Modern qualified immunity emerged as a defense to suits brought by individuals to vindicate their rights.[12]   The doctrine shields government officials from "liability for civil

---

[12] Scholars have noted that modern qualified immunity originated as a response to the development of the ability of the public to bring civil suits against government officials under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Aaron L. Nielson & Christopher J. Walker, *Qualified Immunity and Federalism*, 109 Geo. L. J. 229, 238–45 (2020); William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45, 62–69 (2018).

damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. It is not a freestanding defense against all claims or actions.[13]

Here, California sues not to vindicate any individual's rights, but to exercise its law-enforcement powers as a sovereign state. Defendants have not shown that qualified immunity applies to a State using a federal statute to enforce its taxation and regulatory obligations against tribal officials. Before the district court and again on appeal, Defendants did not identify a single case in which a court applied qualified immunity in similar circumstances. Indeed, when asked at oral argument for any case supporting their claim that qualified immunity applies, Defendants offered none. Oral Arg. at 5:01–5:20; *cf. Wyatt v. Cole*, 504 U.S. 158, 166, 168 (1992) (rejecting a qualified immunity defense outside civil damages actions against government officials). California also brings a federal cause of action to enforce its state law, and this Court has already made clear that qualified

---

[13] *See* Mitchell N. Berman, R. Anthony Reese & Ernest A. Young, *State Accountability for Violations of Intellectual Property Rights: How to "Fix"* Florida Prepaid *(and How* Not *to)*, 79 Tex. L. Rev. 1037, 1123 (2001) ("Even though qualified immunity is plainly available as a defense to some statutory claims, however, the courts have acknowledged that the defense is incompatible with certain federal statutes."); Baude, *Is Qualified Immunity Unlawful?*, *supra* note 12, at 58–60 (discussing that common law qualified immunity defenses were not freestanding). *But see* Scott A. Keller, *Qualified and Absolute Immunity at Common Law*, 73 Stan. L. Rev. 1337, 1368 (2021) ("While there may have been some ambiguity about *absolute* immunity for certain executive officials around 1871, the common law definitively accorded at least *qualified* immunity to all executive officers' discretionary duties.").

immunity does not shield defendants from state-law claims. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013). Qualified immunity does not shield officers from all regulatory duties or obligations, and it does not shield Defendants from their obligations under California law in these circumstances.

In contrast, California's cigarette regulations and the PACT Act *do* apply to Defendants. The Supreme Court has held that a tribal cigarette distributor that sells to non-tribal customers on the tribe's reservation may be required to remit taxes to the relevant State. *See Cal. State Bd. of Equalization*, 474 U.S. at 12. The Court has upheld other tax enforcement schemes under the "particularized inquiry" of *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144–45 (1980). *See also Moe v. Confederated Salish & Kootenai Tribes of the Flathead Rsrv.*, 425 U.S. 463, 483 (1976). And we have held that sales to other tribal distributors, made off reservation or on another tribe's reservation, may be subject to state cigarette laws. *See Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 729–30 (9th Cir. 2021).

Defendants have been repeatedly advised that their conduct violated California's cigarette regulations and the PACT Act. California sent a warning letter about possible violations of state tax laws and the PACT Act in August 2018. In November 2019, the ATF placed Azuma on the non-compliant list and rejected Defendants' arguments that the PACT Act did not apply to them. In October 2022, California again sent a warning letter about Azuma's unlawful cigarette distribution. And in April 2023, the ATF again informed Azuma that it was violating the PACT Act and California law.

Qualified immunity is a personal-damages defense for suits vindicating individual rights—not a license to ignore the law, nor a permanent immunity to avoid rendering to California what is California's.  Accordingly, Defendants cannot claim qualified immunity from the State's PACT Act claims.

## CONCLUSION

For these reasons, the district court's denial of qualified immunity and tribal sovereign immunity for California's PACT Act claims is **AFFIRMED**.